560 A.2d 294

**HIGHFIELD II, INC., Appellant,**

**v.**

**The MUNICIPALITY OF UPPER ST. CLAIR, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1989.

Decided June 16, 1989.

Michael R. Kelly, Walter A. Koegler, Koegler & Tomlinson, Pittsburgh, for appellant.

Robert N. Hackett, Michael L. Brenner, Robert N. Hackett & Associates, Joan P. Feldman, Mark J. Christman, Pittsburgh, for appellee.

Louden L. Campbell, Calkins & Campbell, Harrisburg, for amicus curiae, Builders Association of Metropolitan Pittsburgh.

Before CRAIG and SMITH, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

Highfield II, Inc. appeals an order of the Court of Common Pleas of Allegheny County that affirmed a decision of the Board of Commissioners (board) of the Township of Upper St. Clair (township) granting final approval to Highfield's proposed office and retail development, but subject

to Highfield posting a $190,605 bond as performance security. We affirm the trial court.

In 1983, Highfield applied for approval of Phase I of a five-phase office and retail development project. The project would consist of a 21,000 square foot retail shopping center building at the southwest quadrant of the intersection of Boyce Road and Hidden Valley Drive. Section 130–23 of the Township Zoning Ordinance adopts a two-tiered procedure for application and approval of planned shopping and office centers, as set forth in the ordinance and in the Pennsylvania Municipalities Planning Code (MPC), sections 701–712,[1] for planned residential development.

On November 5, 1984, the board granted tentative approval to Highfield's Phase I application, subject to three modifications and twenty-six conditions. Significantly, Condition 7 stated:

> That subsequent final approvals shall be subject to the compliance with the driveway designs and any improvements to Hidden Valley Drive or Boyce Road as recommended by the township's consulting traffic engineer and determined by the township in its sole discretion and approved by the Pennsylvania Department of Transportation, in order to mitigate the traffic impacts created by the Boyce Station Mall complex on the local street. *All costs of such improvements shall be paid for by the applicant.* (Emphasis added.)

On December 2, 1985, the board adopted Ordinance No. 1173, which granted final approval to the Highfield project subject to the posting of a performance bond. Section 5 of Ordinance No. 1173 pertinently stated:

> Section 5. That Final Approval is further subject to the submission of a performance security in the amount of

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10701–10712. Under the statutory procedure adopted by this section of the ordinance, the board may grant tentative approval subject to specific conditions; the developer then has thirty days after written notice of tentative approval to notify the board of its refusal to accept the conditions. MPC § 709.

$190,605 in a form acceptable to the Township to provide for improvements to Boyce Road/Hidden Valley Drive intersection as recommended by the Township Traffic Engineer, in accordance with Condition 7 of Decision USC–PD 2–84.

On December 31, 1985, Highfield appealed to the Allegheny County Court of Common Pleas from the requirement of the performance bond. On July 22, 1986, a trial judge remanded the case to the board for a hearing on Highfield's objection to the condition of final approval, to be held within thirty days, giving Highfield an opportunity to present evidence and legal arguments. On October 6, 1986, the board affirmed its requirement that Highfield escrow $190,-605 as a condition of final approval.

Highfield did not file a new appeal with respect to the board's October 6 decision. Instead, Highfield proceeded with the case at the same number and term from which it had been remanded. On January 21, 1987, the township filed a motion to dismiss. Another trial judge granted the board's motion, holding that the trial court lacked jurisdiction to proceed further. Highfield appealed the trial court's order to this court. In *Highfield II, Inc. v. The Municipality of Upper St. Clair*, 118 Pa. Commonwealth Ct. 43, 544 A.2d 1081 (1988), our court reversed the trial court's decision and remanded the case with directions "to proceed with the appeal as filed."

On July 27, 1988, the trial court appointed a special master to hear any additional evidence. On August 31, 1988, the trial court vacated its July 27, 1988, order and granted the parties the right to file supplemental briefs. On September 8, 1988, Highfield filed a petition to enforce this court's remand order. On September 21, 1988, this court denied that petition because Highfield had sufficient opportunity to present additional evidence before the board, but had chosen not to do so.

Thereafter, Administrative Judge Ralph Cappy affirmed the decision of the board subjecting Highfield's final approval to the posting of bond in the amount of $190,605.

■ First, Highfield contends that the board relied erroneously upon section 709(a)(2) of the MPC, 53 P.S. § 10709(a)(2), and on section 130–17(c)(2)[1][b] of the township's zoning ordinance for the authority to impose the escrow requirement set forth in section 5 of the conditions imposed in Ordinance 1173. This section is inapplicable, Highfield contends, because it refers specifically to a planned residential development. Therefore, the board had no authority to enact section 5 of Ordinance No. 1173, which required the posting of the bond before final approval would be granted.

After reviewing the relevant portions of the MPC, we conclude that section 509, 53 P.S. § 10509, applies in this situation. That section relevantly provides:

§ 10509. Completion of improvements or guarantee thereof prerequisite to final plat approval

No *plat* shall be finally approved unless the streets shown have been improved to a mud-free or otherwise permanently passable condition or improved as may be required by the subdivision and land development ordinance and any walkways ... and other improvements as may be required by the subdivision and land development ordinance have been installed in accordance with such ordinance. *In lieu of the completion of any improvements required as a condition for the final approval of a plat, the subdivision and land development ordinance shall provide for the deposit with the municipality of financial security in an amount sufficient to cover the costs of any improvements* or common amenities including, but not limited to, roads, storm water detention and/or retention basins ... which may be required. Without limitation as to other types of financial security which the municipality may approve, which approval shall not be unreasonably withheld, Federal or Commonwealth chartered lending institution irrevocable letters of credit and restrictive or *escrow accounts* in such lending institutions shall be deemed acceptable fi-

nancial security for the purposes of this section.... Such bond, or other security shall provide for, and secure to the public, the completion of any improvement which may be required within one year of the date fixed in the subdivision plat for completion of such improvements. The amount of financial security shall be equal to one hundred ten percent of the cost of the required improvements for which financial security is to be posted.... If the party posting the financial security requires more than one year from the date of posting of the financial security to complete the required improvements, the amount of financial security may be increased by an additional ten percent for each one year period beyond the first anniversary date from posting of financial security or to an amount not exceeding one hundred ten percent of the cost of completing the required improvements.... (Emphasis added.)

MPC section 107(16), 53 P.S. § 10107(16), defines "plat" as "the map or plan of a subdivision or land development, whether preliminary or final." A development like Highfield's also clearly falls within the definition of a "land development" in MPC section 107(11), 53 P.S. § 10107(11), which covers the development of a building group on one lot, as in the multiple phases here. Nothing in the MPC prohibits land development provisions and procedures from being included in a zoning code.

The board here granted approval of Highfield's proposal but made the final approval subject to various conditions, specifically the posting of a bond to pay for improvement at the Boyce Road/Hidden Valley Drive intersection. We agree with the trial court that the board may impose restrictions or conditions designed to mitigate the objectionable features of a proposal. *Nicholson v. Board of Adjustment*, 392 Pa. 278, 140 A.2d 604 (1958). The plain language of the law makes it clear that the board may, in its discretion, require a developer to post a security deposit as an assurance of compliance with township code requirements. Accordingly, we conclude that the board had statutory authority to require Highfield to post the security for

improvements to the Boyce/Hidden Valley Drive intersection before final approval is granted.

■ Next, Highfield contends that the nature, extent and cost of the required improvements to the intersection are unreasonable and, because they deal with an off-site improvement, are also unlawful. However, in attacking the nature and extent of the required improvements, Highfield is in fact attacking the content of Condition 7 to the tentative approval. That condition, as quoted above, requires "improvements to Hidden Valley Drive or Boyce Road" as recommended by the engineer and determined by the township, to mitigate the impact created by the complex "on the local street." Clearly, this condition, by its terms, does not limit the required improvements to "the local street." Its terms relate to improvements of the intersection of the two roads, to the extent that either road may be involved, to mitigate the traffic impacts, as stated. Highfield has not employed the remedy which was available to it, at the time of approval, to attack the questions of its nature or extent of the condition. MPC § 709(a), 53 P.S. § 10709(a), provides that, if a developer desires to object to a condition of tentative approval, the developer or landowner must communicate an objection in writing at that time, "in which case, the governing body shall be deemed to have denied tentative approval of the development plan." Such a deemed denial then permits the landowner to pursue appeals under the MPC. Because Highfield did not exhaust that procedure, Highfield must accept the condition as imposed. With respect to the $190,605 amount specified to secure performance, we agree with the trial court's finding that the amount is supported in the record as reasonably necesary to assure the performance specified by Condition 7.

■ Finally, Highfield contends that the board had no authority to alter the terms of the tentative approval by making the final approval subject to the posting of a bond. Condition 7, Highfield argues, makes no reference to either a performance security or an escrow for such purposes; therefore, the board could not amend the original require-

ments and substitute condition 5, the bonding requirement, as a prerequisite to final approval.

Section 130-22(h)(1) of the township's zoning ordinance provides for the filing of a performance bond when necessary and states:

§ 130-22.  Procedure for approval.

.    .    .    .    .

■ Filing of a performance bond, naming the township as obligee, by the DEVELOPER in the amount of one hundred ten percent (110%) of the estimated construction cost of the PRIVATE and PUBLIC IMPROVEMENTS as determined by the township.  Any bond required shall be from a company licensed as a surety in the Commonwealth of Pennsylvania listed by the United States Treasury Department and rated A:AAA in Best's Insurance Guide.  Upon acceptance of all PUBLIC IMPROVEMENTS by the township, the performance and payment bond shall be released.

Although this provision expressly applies to planned residential development, authority for the imposition in this instance, to the office and retail development, can be found in section 130-23(B) of the township ordinance.  Section 130-23(B) relevantly states:

§ 130-23.  Planned Shopping Center.  Office Center and Industrial Park Development.

.    .    .    .    .

B.  Procedure for application and approval of a CONDITIONAL USE for PLANNED SHOPPING CENTER, OFFICE CENTER and INDUSTRIAL PARK DEVELOPMENTS.  The procedure for the application and approval of a PLANNED SHOPPING SHOPPING CENTER, OFFICE CENTER and INDUSTRIAL PARK DEVELOPMENT shall be the same as the procedure for PLANNED RESIDENTIAL DEVELOPMENTS as hereinbefore set forth in § 130-22. . . .

Thus, the township has authority to require Highfield, as a condition of final approval, to escrow funds to insure all improvements to the Boyce/Hidden Valley Road area occur.

In summary, we agree with the trial judge's conclusion that Highfield

had notice and did not object to Condition 7 of the Board's tentative approval. Upon investigation of traffic impact of the proposal and costs of improvements, the Board informed the appellant of the amount of the performance bond. The performance bond was not a new condition imposed at the time of final approval and appellant is required to meet the condition before the Board is required to grant final approval.

Accordingly, the township may refuse permission to develop if Highfield fails to fulfill the specified conditions. *Upper St. Clair v. Boyce Road Partner*, 109 Pa. Commonwealth Ct. 398, 531 A.2d 111 (1987).

The sound decision of Administrative Judge Cappy shall be affirmed.

## ORDER

NOW, June 16, 1989, the decision of the Court of Common Pleas of Allegheny County, at No. SA 2232–1985, dated December 8, 1988, is affirmed.